78 F.3d 1232
 Pens. Plan Guide P 23918M
Alan Perry WAHLIN, Plaintiff-Appellant,
v.
SEARS, ROEBUCK & COMPANY, Barry H. Pike, in his official
capacity as the Sears Pension Plan Administrator
and Sears Logistics Services,
Incorporated, Defendants-Appellees.
 No. 95-1642.
 United States Court of Appeals,
Seventh Circuit.
 Argued Sept. 13, 1995.
Decided March 19, 1996.
 
 Appeal from the United States District Court for the Northern District of Illinois, Eastern Division, No. 94 C 1518; John F. Grady, Judge.
 Fay Clayton, Robinson, Curley & Clayton, Chicago, IL, Henry F. Field (argued), Chicago, IL, for Plaintiff-Appellant.
 John T. Murray (argued), Valerie J. Hoffman, Michelle T. Barrett, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, IL, for Defendants-Appellees.
 Before COFFEY, EASTERBROOK, and RIPPLE, Circuit Judges.
 COFFEY, Circuit Judge.
 
 
 1
 Alan Perry Wahlin appeals the district court's dismissal of his complaint for failing to state a claim under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1132. We affirm.
 
 I. Background
 
 2
 In 1990, Alan Perry Wahlin was a director of corporate accounting and finance at Sears Logistical Services (SLS), a subsidiary of Sears, Roebuck & Company (Sears), where he had been employed since 1966. Due to reorganization at SLS, the company offered Wahlin the opportunity for an early retirement and enhanced benefits under a program labelled "SLS Unit Closing Severance Allowance Plan for Checklist Employees (Reorganization Incentive)," also known as "Plan No. 501." With regard to pension benefits, the "Reorganization Incentive" plan provided that "you [the employee] will be offered enrollment in any retirement benefit plans for which you are eligible." Wahlin accepted the early retirement package and on December 7, 1990 he signed a letter of understanding, which provides in relevant part:
 
 
 3
 This will confirm our understanding that you will continue active employment until [March 31], 1992, at which time you will become eligible for and agree to accept the benefits of the SLS Unit Closing Allowance Plan for Checklist Employees (Reorganization Incentive) in effect on November 26, 1990.
 
 
 4
 This arrangement is in accordance with the provisions of the Reorganization Incentive, and the severance benefits you will receive will be governed by the terms and conditions of that Plan. In this regard, you agree to complete the required forms necessary to be eligible for the Reorganization Incentive. The other benefits you will be entitled to at retirement, such as Pension, will be governed by the applicable plans then in effect.
 
 
 5
 Accordingly, Wahlin continued active employment with SLS until March 31, 1992, when he began his leave of absence pursuant to the agreement. The paid leave of absence was to run for one year, to March 31, 1993, at which time Wahlin was due to retire and would commence to receive pension benefits.
 
 
 6
 However, during Wahlin's leave of absence in 1992, SLS continued downsizing its operations and offered its current employees a somewhat different retirement incentive package, entitled "SLS 1993 Early Retirement Incentive Program for Exempt Associates" (or "ERIP"). Although similar to the "Reorganization Incentive" previously accepted by Wahlin, the 1993 ERIP offered its participants an additional benefit: "a credit of an additional five years to both age and length of service [will] be used in calculating pension benefits...."
 
 
 7
 ERIP was composed of two parts: a Voluntary ERIP and the Unit Closing/Reorganization ERIP, the first for voluntary retirees and the latter for those employees forced into retirement by unit closings and company reorganization. However, both ERIP programs were offered only to those employees who were currently on active employment status and the plan specifically excluded from coverage those employees, such as Wahlin, who had previously accepted retirement packages under the prior "Reorganization Incentive" package then-offered.[1]
 
 
 8
 On March 10, 1993 Wahlin wrote the ERIP plan administrator, requesting the new five-year credit available under the 1993 ERIP program. The plan administrator refused Wahlin's request, stating that because he had formally retired in 1992 and accepted the "Reorganization Incentive" retirement package offered at that time, he was ineligible for the 1993 ERIP benefits. Wahlin requested a review of this decision, but the plan administrator again denied his claim for the additional benefits, reasoning:
 
 
 9
 The enhanced pension benefit is available only to associates who meet the eligibility requirements for ERIP. As mentioned in my earlier correspondence, associates receiving benefits under the Closed Unit/ Reorganization Severance Plan (Plan 501) are not eligible for benefits from the ERIP. This is one of the applicable provisions of the Plan and, as such, is also consistent with the December 6, 1990 letter of understanding attached to your request for reconsideration.
 
 
 10
 Wahlin brought this action against SLS, Sears, and the plan administrator, claiming that he was denied benefits due under the 1993 ERIP. 29 U.S.C. §§ 1132(a)(1)(B), (a)(3).[2] The district court dismissed the complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failing to state a claim upon which relief could be granted. Wahlin appeals.
 
 II. Analysis
 
 11
 "We review the district court's grant of the 12(b)(6) motion de novo, accepting all the well-pleaded allegations in the complaint as true and drawing all reasonable inferences in favor of [Wahlin]." Travel All Over the World Inc. v. The Kingdom of Saudi Arabia, 73 F.3d 1423, 1428 (7th Cir.1996); Chicago Truck Drivers v. Steinberg, 32 F.3d 269, 271 (7th Cir.1994).
 
 
 12
 However, where a plan vests an administrator with discretionary authority to determine eligibility for benefits, we review the administrator's decision deferentially. Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 114-15, 109 S.Ct. 948, 956-57, 103 L.Ed.2d 80 (1989) ("Trust principles make a deferential standard appropriate when a trustee exercises discretionary powers."); Patterson v. Caterpillar Inc., 70 F.3d 503, 505 (7th Cir.1995) ("The Supreme Court has held that deferential review is appropriate when the plan administrator is authorized to exercise discretion or to construe terms of the plan."). The ERIP plan at issue in Wahlin's case provides that the plan administrator has the "discretionary authority to interpret the terms of the Plan and to determine eligibility for and entitlement to Plan benefits in accordance with the terms of the Plan" and that "[a]ny interpretation or determination made pursuant to such discretionary authority shall be given full force and effect, unless it is shown that the interpretation or determination was arbitrary and capricious." Because the ERIP plan, in clear and unambiguous language, gives the plan administrator discretionary authority, the administrator's decision is reviewed deferentially, under the arbitrary and capricious standard. Butler v. Encyclopedia Brittanica, 41 F.3d 285, 288 (7th Cir.1994); Loyola Univ. of Chicago v. Humana Ins. Co., 996 F.2d 895, 898 (7th Cir.1993).
 
 
 13
 "Before concluding that a decision was arbitrary and capricious, a court must be very confident that the decisionmaker overlooked something important or seriously erred in appreciating the significance of evidence." Patterson, 70 F.3d at 505 (citing Pokratz v. Jones Dairy Farm, 771 F.2d 206, 209 (7th Cir.1985)).
 
 
 14
 Resolving this dispute over the denial of benefits under an ERISA-governed plan requires us to apply the federal common law rules of contract interpretation. Brewer v. Protexall Inc., 50 F.3d 453, 457 (7th Cir.1995); McNeilly v. Bankers United Life Assur. Co., 999 F.2d 1199, 1201 (7th Cir.1993). "Those rules direct us to interpret ERISA plans in an ordinary and popular sense as would a person of average intelligence and experience...." Brewer, 50 F.3d at 457 (quoting Bullwinkel v. New England Mut. Life Ins. Co., 18 F.3d 429, 431 (7th Cir.1994)). Additionally, "when plan terms are ambiguous, we construe them strictly in favor of the insured." McNeilly, 999 F.2d at 1201 (citing Phillips v. Lincoln Nat. Life Ins. Co., 978 F.2d 302, 307 (7th Cir.1992)). "A term is [only] ambiguous if it is subject to reasonable alternative interpretations." Bechtold v. Physicians Health Plan, 19 F.3d 322, 325 (7th Cir.1994) (citing Hickey v. A.E. Staley Mfg., 995 F.2d 1385, 1389 (7th Cir.1993)).
 
 
 15
 Wahlin concedes that the 1992 "SLS Unit Closing Severance Allowance Plan for Checklist Employees (Reorganization Incentive)" and the 1993 ERIP are two separate benefit packages and that those employees who accepted the earlier Reorganization Incentive are not eligible for ERIP benefits. Nonetheless, attempting to create a phantom window of opportunity, he argues that his December 7, 1990 letter of understanding provides that at the completion of a one year leave of absence, his pension benefits "will be governed by the applicable plans then in effect." According to Wahlin, because the ERIP plan was effective at the time of his retirement, it is an "applicable" plan under which he is entitled to pension benefits. Thus, Wahlin argues that the letter of understanding granted him pension rights greater than those available to employees who elected the 1992 Reorganization Incentive and that his pension benefits must therefore be calculated under the terms of 1993 ERIP. We disagree.
 
 
 16
 "Applicable" is defined as "1. Capable of being applied; having relevance; or 2. fit, suitable, or right to be applied." Webster's Third International Dictionary 105. The 1993 ERIP plan specifically excluded from coverage those employees who had accepted the 1992 "Reorganization Incentive" plan. It is uncontested that Wahlin agreed to "continue active employment until [March 31], 1992, at which time you [Wahlin] will become eligible for and agree to accept the benefits of the SLS Unit Closing Allowance Plan for Checklist Employees (Reorganization Incentive)." Thus, the ERIP plan is not "applicable" to those in Wahlin's position, or, tracking the definition of "applicable," ERIP is not the relevant or suitable source to calculate the pension benefits for those who had accepted the 1992 Reorganization Incentive. We disagree with Wahlin's argument that his letter of December 7, 1990 created additional rights to those set forth in the 1992 Reorganization Incentive, and we see no appreciable difference between the pension benefits language of the Reorganization Incentive (benefits governed by "any retirement benefit plans for which you are eligible") and the language of Wahlin's letter of understanding (benefits governed by "the applicable plans then in effect"). The effective result of the 1992 Reorganization Incentive's condition that an employee only receives benefits from plans for which he is "eligible" is the same as the language of Wahlin's 1990 letter that he will only receive benefits from plans that are "applicable." In other words, employees who elected to take early retirement under the 1992 Reorganization Incentive cannot receive benefits under the subsequently offered ERIP plan. Bearing in mind that we review the plan administrator's decision for "arbitrariness and capriciousness," the plain, clear, and unambiguous language of the letter and the ERIP plan lends no support to Wahlin's argument.
 
 
 17
 Having gained the early retirement of some employees under the Reorganization Incentive package, SLS offered the ERIP plan to encourage more employees to take early retirement. However, Wahlin accepted the Reorganization Incentive and in doing so took the risk that more lucrative packages would be offered to employees in the future (those employees who "held out" for a more lucrative package perhaps took the risk that retirement benefits would not be so generous in the future, or that no incentives would be offered at all, if enough employees retired under the Reorganization Incentive).
 
 
 18
 Plaintiff understandably wishes that he had the additional benefit of the ERIP retirement package; but he is bound by his agreement to accept the "applicable" pension plan. ERIP, by its specific terms, is not applicable to employees, such as Wahlin, who had accepted a prior retirement package, the Reorganization Incentive. Our review of the documents reveals that the plan administrator did not act "arbitrarily or capriciously" in denying Wahlin benefits under the ERIP plan.
 
 III. Conclusion
 
 19
 The judgment of the district court is AFFIRMED.
 
 
 
 [1]
 The "Voluntary ERIP" contained the following exclusion:
 Associates who, on March 15, 1993, are ... receiving benefits under the SLS Closed Unit/Reorganization Severance Allowance Plan (Plan No. 501) are not eligible for the Voluntary ERIP portion of the plan.
 Likewise, the Unit Closing/Reorganization ERIP stated:
 Persons eligible for the Unit Closing/Reorganization ERIP are exempt associates who: ... are not receiving benefits under the SLS Closed Unit/Reorganization Severance Allowance Plan (Plan No. 501) as of January 1, 1993.
 Plan No. 501, the plan specifically excluded from the beneficial pension calculations of ERIP, was the "Reorganization Incentive" plan that Wahlin had accepted.
 
 
 [2]
 ERISA provides that a "civil action may be brought by a participant or beneficiary to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Because ERIP is an ERISA-governed benefits plan, the plan administrator's denial of benefits provides jurisdiction for Wahlin's complaint