ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT
 

 McKINNEY, District Judge.
 

 In the case at bar, Plaintiff Diana K. Hightshue (“Hightshue”) filed a claim for long term disability benefits in October of 1993. For various reasons, Defendant AIG Life Insurance Company (“AIG”) denied this claim. Hightshue then initiated the present litigation, alleging that, by denying her disability claim, AIG violated the Employee Retirement Income Security Act of 1974 (“ERISA”). This matter now pends before this Court on cross motions for summary judgment. For reasons set forth fully below, this Court now GRANTS summary judgment
 
 *1353
 
 in favor of AIG and DENIES Hightshue’s motion.
 

 As an additional note, AIG has filed two separate motions to strike materials submitted by Hightshue in support of her motion for summary judgment. This Court shall DENY these motions and shall instead draw upon these materials to the extent authorized under the appropriate standard of - review.
 

 I. BACKGROUND
 

 According to the record presently before this Court, Hightshue worked for Dow-Brands, a division of The Dow Chemical Company (“Dow Chemical”), from August of 1990 until January of 1993. Aff. of Diana K. Hightshue (“Hightshue Aff.”), ¶ 1. Dow-Brands employed Hightshue in the Customer Services area, initially as a customer service representative and subsequently as an accounts receivable assistant. Hightshue Aff., ¶ 3. On three separate occasions while she worked for DowBrands, Hightshue was exposed to airborne mercaptan, the safety odorizer added to natural gas, which had escaped from a holding tank near her office.
 
 [1]
 
 Hightshue Aff., ¶¶ 6, 11, 17. The first exposure occurred on June 9, 1992. Because Hightshue suffered breathing difficulties, loss of voice, disorientation, and some edema after this exposure, she was taken to the Immediate Care Center later that day. Hightshue Aff. ¶ 7. When the second exposure occurred on September 23, 1992, Hightshue experienced severe breathing difficulties and other symptoms. Hightshue Aff., ¶¶ 11, 12. She was taken to St. Vincent Hospital and treated in the emergency room. Hightshue Aff., ¶ 12. After this second exposure, Hightshue’s overall condition worsened. Hightshue Aff., ¶ 13.
 

 A third exposure to mercaptan occurred on January 19, 1993. Hightshue Aff., ¶ 17. At this time, Hightshue experienced an even more severe reaction, and she was once again treated at St. Vincent’s Hospital. Hightshue Aff., ¶ 17. Soon after, on January 29, 1993, Hightshue terminated her employment at DowBrands. Hightshue Aff., ¶ 1. On October 25, 1993, she completed an Application for Total Disability or Permanent Total Disability Benefits. Aff. of Priscilla M. Aiken (“Aiken Aff.”), ¶ 5 and Ex. B, pp. B-l to B-2. In this application, Hightshue claimed that she was permanently and totally disabled due to reactive airway dysfunction syndrome (“RADS”) resulting from the exposures to airborne mercaptan. Aiken Aff., ¶ 5 and Ex. B, pp. B-l to B-2.
 

 At the time Hightshue filed her claim, DowBrands’ employees received long term disability benefits through Dow Chemical’s Voluntary Group Accident Insurance Plan. Aff. of Pat Henderson (“Henderson Aff.”), ¶¶ 1-3. Under this Plan, AIG provided the voluntary group accident and disability coverage. Aiken Aff., ¶3. In addition, Dow Chemical has appointed AIG the Plan’s “Claims Administrator.” Henderson Aff., ¶ 5. In this capacity, AIG bears the responsibility of reviewing claims for insurance benefits, computing the amount of benefits payable, and making the final decision regarding payment of benefits. Henderson Aff., Ex. A, p. 10. The Plan also designates the claim administrator as “the ‘named fiduciary of the Plan with regard to any review and final decision on a claim for benefits under this plan.” Henderson Aff., Ex. A, p. 10. Accordingly, AIG reviewed Hightshue’s Application for disability benefits to determine the nature and extent of her alleged injury. Aiken Aff., ¶¶ 1, 2. Priscilla Aiken, Manager of Accidental Death and Disability Claims for AIG, supervised the review of Hightshue’s claim. Aiken Aff., ¶¶ 1, 2.
 

 In Article IV, Paragraph 4.1, the Plan previously stated that benefits would be provided using the format of the master group insurance policy of American Home Assurance Company. Henderson Aff., Ex. A. In an amendment dated October 1, 1991, the Plan replaced this master group insurance policy with AIG’s master group insurance policy. Henderson Aff., Ex. A. The AIG master group insurance policy defines “injury’ as “bodily injury caused by an accident occurring while this policy is in force as to
 
 *1354
 
 the Insured Person and resulting directly and independently of all other causes in loss covered by this policy.” Henderson Aff., Ex. A., App. II, p. 1. In addition, to qualify for permanent total disability benefits, an individual must be “totally and permanently disabled and prevented from engaging in each and every occupation or employment for compensation or profit for which he is reasonably qualified by reason of his education, training, or experience.” Henderson Aff., Ex. A., App. II, p. 7. After reviewing Hightshue’s claim, AIG denied her request for benefits finding that her medical difficulties did not arise solely from her exposure to mercaptan and that she was still able to perform certain types of employment.
 
 [2]
 
 Aiken Aff., ¶¶ 21, 22.
 

 Before reaching these conclusions, AIG reviewed a broad range of materials, including the records of Dr. D. Duane Houser of the Northside Center for Respiratory Allergy and Patricia Chunn of Professional Communications Care.
 
 [3]
 
 Aiken Aff., ¶ 7. According to AIG, these records suggested that Hightshue had a history of severe asthma, episodic airways disease, and bronchitis predating her exposure to mercaptan at DowBrands. Aiken Aff., ¶ 9. Next, AIG submitted Hightshue’s medical records and claims materials to NorthAmeriean Medical Evaluations (“NorthAmeriean”) for independent analysis and review by an independent medical specialist. Aiken Aff., ¶ 12. NorthAmeriean asked Dr. Jack Kaufman, an independent internist and allergy medical specialist, to review these documents and render an opinion as to whether Hightshue’s condition was caused by an accident directly and independently of all other causes. Aff. of Jack H. Kaufman, M.D. (“Dr. Kaufman Aff.”), ¶ 5. In a report to AIG dated January 27, 1994, Dr. Kaufman concluded that Hightshue suffered from Cholingeric Asthma which predated her exposure to mercaptan. Dr. Kaufman Aff., ¶ 7 and Ex. B. Therefore, he reasoned, her alleged disability of RADS was not caused by an accident directly and independently of all other causes. Dr. Kaufman Aff., ¶ 7. Dr. Kaufman also determined that Hightshue was not totally disabled from each and every occupation for which she was reasonably qualified by her education, training, and experience. Dr. Kaufman Aff., ¶ 8.
 

 In addition, AIG submitted Hightshue’s records and claim materials — as well as Dr. Kaufman’s report — to GENEX Services (“GENEX”) for independent analysis and review by a vocational assessment specialist. Aiken Aff., ¶ 17. Carolyn A. Pavol, an independent vocational rehabilitation specialist, reviewed these materials and conducted a vocational assessment based upon a transferable skills analysis and a labor market survey. Aff. of Carolyn A. Pavol (“Pavol Aff.”), ¶¶ 5-7 and Ex. B. In a letter to AIG dated February 28, 1994, Pavol concluded that Hightshue had sufficient skills to qualify for numerous employment positions — so long as the environment was dust or pollution free. Pavol Aff., ¶ 7 and Ex. B., p. 7.
 

 Based upon its own review and the conclusions of Dr. Kaufman and Pavol, AIG concluded that Hightshue had not suffered a compensable injury. Aiken Aff., ¶ 21. Specifically, AIG found that Hightshue’s injury had not resulted from her exposure to mercaptan directly and independently of any other cause. Aiken Aff., ¶ 21. In addition, AIG determined that Hightshue’s alleged disability did not preclude her from pursuing each and every occupation or employment for which she was reasonably qualified by reason of her education, training, or experience. Aiken Aff., ¶21. As such, AIG denied Hightshue’s claim for disability insurance benefits in a letter dated April 8, 1994. Aiken
 
 *1355
 
 Aff., ¶ 22 and Ex. B, p. B-313. In this same letter, AIG informed Hightshue of the process by which she could appeal the decision against her. Aiken Aff., Ex. B, p. B-313. To date, Hightshue has not initiated an appeal of the decision. Aiken Aff., ¶ 23.
 

 While Hightshue does not dispute the fact that AIG, Dr. Kaufman, and Pavol examined the materials relating to her claim, she does challenge their conclusions. In part, she contends that “cholinergic asthma” is an “ ‘outdated term from an outdated hypotheses of the 1960’s and 1970’s which has been discarded.’ ” Pl.’s Answer Br., p. 7 (quoting Aff. of D. Duane Houser, M.D. (“Dr. Houser Aff.”), ¶ 8(a)). She asserts that AIG should have focussed more closely upon the findings of Dr. Houser, who has treated her since October of 1992 and has diagnosed her as having RADS. Pl.’s Answer Br., pp. 6-8. Essentially, she argues that AIG acted in an arbitrary and capricious manner by denying her claim.
 

 On January 20, 1995, Hightshue initiated the present action, alleging that AIG’s actions violated ERISA. AIG filed a motion for summary judgment on December 1,1995; Hightshue responded with her own motion for summary judgment on March 18, 1996. These motions are now ready for this Court’s attention.
 

 II. ANALYSIS
 

 A SUMMARY JUDGMENT STANDARD
 

 Rule 56(c) of the Federal Rules of Civil Procedure specifies that summary judgment “shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.” When this standard has been met, summary judgment is mandatory.
 
 Celotex Corp. v. Catrett,
 
 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986);
 
 Shields Enters., Inc. v. First Chicago Corp.,
 
 975 F.2d 1290, 1294 (7th Cir.1992). The mere existence of a factual dispute, by itself, is not sufficient to bar summary judgment. Rather, the disputed facts must be outcome determinative.
 
 Anderson v. Liberty Lobby, Inc.,
 
 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986);
 
 Schroeder v. Barth,
 
 969 F.2d 421, 423 (7th Cir.1992). Guided by these standards, this Court now considers the present motions.
 

 B. STANDARD OF REVIEW
 

 As a threshold matter, this Court must identify the standard of review applicable to AIG’s decision to deny disability benefits. As recently noted by the Seventh Circuit, the Supreme Court has presented a “‘smorgasbord of possibilities’” for standards of review in ERISA cases.
 
 Morton v. Smith,
 
 91 F.3d 867, 870 (7th Cir.1996) (quoting
 
 Exbom v. Central States, Southeast & Southwest Areas Health & Welfare Fund,
 
 900 F.2d 1138, 1142 (7th Cir.1990)). In
 
 Firestone Tire & Rubber Co. v. Bruch,
 
 489 U.S. 101, 115, 109 S.Ct. 948, 956-57, 103 L.Ed.2d 80 (1989), the Supreme Court held that “a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a
 
 de novo
 
 standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan.” However, “[wjhere a plan confers power on the administrator to exercise discretion, the appropriate standard of review is the deferential ‘arbitrary and capricious’ one.”
 
 Ramsey v. Hercules Inc.,
 
 77 F.3d 199, 202 (7th Cir. 1996) (citing
 
 Firestone,
 
 489 U.S. at 111, 109 S.Ct. at 954-55).
 

 In a paragraph entitled “Claims and Review Procedures,” Dow Chemical’s Voluntary Group Accident Insurance Plan provides as follows:
 

 The Claims Administrator shall have the responsibility to review claims, to compute the amount of benefits which will be payable under the Plan, to conclusively determine beneficiaries, and to authorize the payment of benefits. The review and final decision on a claim for benefits under the Plan shall be made by the Claims Administrator substantially in accordance with the welfare benefit claims procedure of the Company and such Claims Administrator (and
 
 not
 
 the Plan Administrator) shall be the “named fiduciary” of the Plan with
 
 *1356
 
 regard to any review and final decision on a claim for benefits under this Plan. The Claims Administrator shall be entitled to use its discretion in good faith in reviewing claims submitted under this Plan, and its decisions shall be upheld absent any arbitrary and capricious action on the part of the Claims Administrator.
 

 Henderson Aff., Ex. A., p. 10, ¶ 6.5. This plain, language vests the Claims Administrator, AIG, with “discretionary authority to determine eligibility for benefits or to construe the terms of the plan.”
 
 Firestone,
 
 489 U.S. at 115, 109 S.Ct. at 957. The Seventh Circuit has indicated that, where fiduciaries are bound by a standard of good faith, courts should “examine the exercise of this degree of discretion to determine whether it is arbi-' trary and capricious.”
 
 Morton,
 
 91 F.3d at 870. Based upon the clear language of the Plan and the guidance from the Supreme Court and the Seventh Circuit, this Court must review AIG’s denial of benefits under the arbitrary and capricious standard.
 
 [4]
 

 The arbitrary and capricious standard requires the court to conduct a “deferential” review of the decision maker’s action.
 
 See Ramsey
 
 77 F.3d at 202. Under this standard, a reviewing court must resolve questions of judgment in favor of the administrator of the disability plan.
 
 Patterson v. Caterpillar Inc.,
 
 70 F.3d 503, 505 (7th Cir. 1995). “‘Before concluding that a decision was arbitrary and capricious, a court must be very confident that the decisionmaker overlooked something important or seriously erred in appreciating the significance of evidence.’”
 
 Wahlin v. Sears, Roebuck & Co.,
 
 78 F.3d 1232, 1235 (7th Cir.1996) (quoting
 
 Patterson
 
 70 F.3d at 505). As noted by the Seventh Circuit, a court applying the arbitrary and capricious standard must “evaluate several factors: the impartiality of the decisionmaking body, the complexity of the issues, the process afforded the parties, the extent to which the decisionmakers utilized the assistance of experts where necessary, and finally the soundness of the fiduciary’s ratiocination.”
 
 Chalmers v. Quaker Oats Co.,
 
 61 F.3d 1340, 1344 (7th Cir.1995).
 

 C. THE PROCESS APPLIED BY AIG
 

 Turning to the present case, then, this Court must determine whether AIG acted in an arbitrary and capricious manner in making its decision to deny Hightshue’s claim for benefits. As previously noted, Hightshue completed her Application for Total Disability or Permanent Total Disability Benefits on October 25, 1993. In this Application, Hightshue claimed she was permanently and totally disabled due to Reactive Airway Dysfunction Syndrome attributable to exposure to mercaptan at her place of employment. With her Application, Hightshue submitted a supporting physician statement from Dr. D. Duane Houser of the Northside Center for Respiratory Allergy; medical records from Dr. Houser and the Northside Center; her job description; and a list of her treating physicians since 1987.
 

 In addition to the materials submitted by Hightshue, AIG also requested her medical records from the other treating physicians she listed. In all, AIG reviewed medical records from seven different sources, including Dr. Houser and Patricia Chunn, the two individuals upon whom Hightshue primarily relies for purposes of the present motions.
 
 *1357
 
 These medical records appear as Exhibit B to the Affidavit of Priscilla Aiken, the Manager of Accidental Death and Disability Claims with the Accident and Health Claims Division of AIG. On November 22, 1993, a claim investigator retained by AIG met with and interviewed Hightshue. However, AIG did not have Hightshue examined by an independent physician.
 

 Upon reviewing these medical records, AIG found that “Ms. Hightshue’s medical records revealed a history of severe asthma, episodic airways disease and bronchitis which existed prior to her exposure to mercaptan at DowBrands.” Aiken Aff., ¶ 9. The medical records do provide support for this conclusion. For example, in a letter dated February 22,1993, Dr. Luke A. Pluto of Pulmonary Associates indicated his opinion that Hightshue had asthma and that she did not meet the criteria for pulmonary impairment. Aiken Aff., Ex. B, p. B-67. Records from the Zionsville Family Practice describe Hightshue’s difficulties resulting from asthma, bronchitis, and reactive airways from 1989 to 1991. Aiken Aff., Ex. B, pp. B-94 to B-102. In September 1989, she suffered an asthma attack which was precipitated by commercial bug spraying and which required emergency room treatment. Aiken Aff., Ex. B, p. B-98. In January, 1989, Hightshue was in the hospital for á near respiratory arrest; the records from the Family Practice indicate that Hightshue has had “a long history of this in the past____” Aiken Aff., Ex. B, p. B-100. Similarly, the Family Practice supplied AIG with records from St. Vincent’s Hospital and Health Care Center that describe Hightshue as having “a history of fairly severe asthma in the past.” Aiken Aff., Ex. B, p. B-112. These records indicate that Hightshue had “a vague history of having severe asthma and/or angioneurotic edema, after she supposedly suffered two respiratory arrests in Canada.” Aiken Aff., Ex. B, p. B-112. A letter from Dr. C. Michael Hart of the Indiana University School of Medicine, dated February 24, 1993, states that Hightshue had a twelve year history of asthma. Aiken Aff., Ex. B, p. B-142.
 

 Rather than rely solely upon its own evaluation of Hightshue’s claim materials and the medical records, AIG submitted these materials to NorthAmerican Medical Evaluations, Inc. of Southfield, Michigan. Aiken Aff., ¶ 12. NorthAmerican enlisted Dr. Jack Kaufman, an independent internist and allergy medical specialist, to examine the materials. Dr. Kaufman Aff., ¶¶ 5, 6. In his report to AIG, Dr. Kaufman indicated that, prior to Hightshue’s employment with Dow Chemical, “she suffered from a condition known as Cholingeric Asthma,” which he described as “a reversible bronehospastie disease most prevalent in young adults that results from involuntary (parasympathetic) overstimulation of the bronchial tubes precipitated by emotions, cold weather, exertion, infections, and offending aeroallergens (pollens, dust) including physical irritants such as noxious fumes.” Dr. Kaufman Aff., Ex. B, p. 1. Dr. Kaufman specifically discussed the actions taken by Dr. Houser and Chunn and noted that Dr. Hart had advised that Hightshue may suffer from RADS. Dr. Kaufman Aff., Ex. B, pp. 1-2. However, Dr. Kaufman ultimately reached the following conclusion:
 

 It is my belief that the numerous consultants she has seen, the plethora of tests she has undergone (all of which have turned out to be normal), and the continuous reinforcement of her symptoms by all of her caregivers that she is, in fact, disabled due to the exposure to toxic fumes in the workplace. The various disabling diagnoses with which she has been branded are poorly supported, self serving, and basically untrue.
 

 The facts, however, reveal that her “disabling condition (RADS)” clearly antedated June 9, 1992. The mercaptan inhalation was only one of several possible triggering mechanisms for her reversible asthmatic condition. It is by no means responsible for the present condition in to which she has been maneuvered.....
 

 She has Cholingeric Asthma (RADS) and her prognosis for return to work, as well as for life, is good. She needs to be reevaluated on a clinical basis only by an independent party and be advised to return to office work (not Dow Brands) as soon as feasible, if it is not too late.
 

 Dr. Kaufman Aff., Ex. B, p. 3.
 

 In addition, AIG submitted Hightshue’s disability claim, her medical records, and Dr.
 
 *1358
 
 Kaufman’s report to GENEX for a vocational assessment. Aiken Aff., ¶ 17. Carolyn Pa-vol, an independent vocational rehabilitation specialist, reviewed Hightshue’s medical history, noting that Dr. Houser had initially diagnosed Hightshue as suffering from Bronchial Asthma aggravated by mercaptan exposure. Pavol Aff., Ex. B, p. 2. Pavol also examined Dr. Kaufman’s report and considered Hightshue’s educational history. Pavol Aff., Ex. B, p. 2. Pavol then performed a transferable skills analysis based upon Hightshue’s “current age, educational level, past work history, and current functional capabilities as discussed by Dr. Kaufman” and found “51 directly transferable occupations, which have primary job duties which are very similar to past work.” Pavol Aff., Ex. B, p. 3. Pavol’s analysis also revealed “110 generally transferable occupations, which may not share specific duties as utilized in past jobs, but are related in a general way.” Pavol Aff., Ex. B, p. 5. Although she did believe that Hightshue’s “alleged ongoing symptoms may restrict her from working in an environment with any type of dust, gas, or fumes,” Pavol concluded that Hightshue “would be capable of performing many of the occupations outlined in this report, with environments that are essentially dust or pollution free.” Pavol Aff., Ex. B, p. 7.
 

 Based upon its own review of Hightshue’s claim materials and medical records, the medical evaluation of Dr. Kaufman, and the vocational assessment by Pavol, AIG denied Hightshue’s claim for benefits. Aiken Aff., Ex. B, p. B-313. To be totally disabled according to the language of the Plan, an individual must be “totally and permanently disabled and prevented from engaging in each and every occupation or employment for compensation or profit for which he is reasonably qualified by reason of his education, training, or experience.” Henderson Aff., Ex. A, App. II, p. 7. In a letter to Hightshue’s attorney dated April 8, 1994, AIG noted that Hightshue had “sufficient skills to qualify for numerous positions which are sedentary or light duty in nature. The only restriction is that she must work in an environment that is essentially dust or pollution free.” Aiken Aff., Ex. B, p. B-312 to B-313. Therefore, AIG concluded that Mrs. Hightshue was not permanently and totally disabled. Aiken Aff., Ex. B, p. B-313. Moreover, the Plan defines “injury” as “bodily injury caused by an accident occurring while this policy is in force as to the Insured Person and resulting directly and independently of all other causes in loss covered by this policy.” Henderson Aff., Ex. A App. II, p. 1. After its review of the materials, AIG found that “based upon Mrs. Hightshue’s medical records, her respiratory problems clearly antedate the incident of June 9,1992.” Aiken Aff., Ex. B, p. B-313. Therefore, AIG concluded that Hightshue’s condition did not result “directly” from her exposure to mercaptan or “independently of all other causes.” Aiken Aff., Ex. B, p. B-313.
 

 At first glance, the scrutiny applied by AIG, by Dr. Kaufman, and by Pavol suggests that AIG did not act in an arbitrary and capricious manner when it decided to deny Hightshue’s claim. However, Hightshue has advanced myriad reasons why AIG’s decision should be found improper — even under this deferential standard of review. After addressing each of these arguments, this Court shall address whether AIG “seriously erred” in its decision based upon the five factors enumerated by the Seventh Circuit in
 
 Chalmers,
 
 61 F.3d at 1344.
 

 D. HIGHTSHUE’S ARGUMENTS
 

 Despite AIG’s seemingly thorough examination of the claim materials and medical records, Hightshue urges this Court to find that AIG acted arbitrarily and capriciously in denying her claim for disability benefits. In support of this proposition, Hightshue has advanced numerous arguments. First, she asserts that AIG’s conclusion that she suffered from Cholingeric Asthma was arbitrary and capricious because that “ ‘is an outdated term from an outdated hypothesis of the 1960’s and 1970’s, now disregarded.’” Pl.’s Answer Br., p. 7 (quoting Dr. Houser Aff., ¶ 8(a)). The record presently before this Court does not indicate that AIG, in fact, drew such a conclusion. In the report to AIG, Dr. Kaufman stated his opinion that Hightshue suffered from this form of asthma; however, in the letter announcing the company’s decision to deny Hightshue’s disability
 
 *1359
 
 claim, AIG simply states its conclusion that Hightshue had “respiratory problems” predating her exposure to mercaptan. Moreover, even if AIG had expressly reached this conclusion, the arbitrary and capricious standard does not permit this Court to second guess medical opinions. Rather, this Court must focus upon whether AIG acted arbitrarily and capriciously in relying upon that medical opinion. Nothing in the present record suggests that AIG acted improperly in relying, in part, upon Dr. Kaufman’s conclusions.
 

 Second, Hightshue charges that Dr. Kaufman lacked sufficient qualifications to evaluate her condition properly and that AIG acted arbitrarily and capriciously by relying upon his opinions. Hightshue urges this Court to compare the curriculum vitae of Dr. Houser to that of Dr. Kaufman, yet this is precisely the sort of comparison that the arbitrary and capricious standard seeks to avoid. To find that an administrator acted arbitrarily and capriciously simply because it relied upon the opinion of an expert with less extensive credentials than an opposing expert would utterly vitiate the arbitrary and capricious standard. There is no room under the arbitrary and capricious standard for such a battle of the experts.
 
 [5]
 

 However, this does not mean that an administrator may rely upon absolutely any opinion when deciding whether to grant or deny a claim for benefits. In some instances, the choice of expert could exceed the administrator’s discretion — even under the most deferential standard of review. For example, it may be arbitrary and capricious to rely solely upon the medical opinion of an individual without any medical training. A court may review the qualifications of an expert to determine whether selection of that expert was arbitrary and capricious. In the present case, AIG’s reliance upon Dr. Kaufman does not contravene this standard. According to Dr. Kaufman’s curriculum vitae, he earned his B.S. in chemistry in 1954 and his M.D. in 1957. Kaufman Aff., Ex. A. Moreover, Dr. Kaufman’s affidavit indicates that he has dedicated a “substantial portion” of his practice “to internal medicine and the evaluation and treatment of allergies.” Kaufman Aff., ¶ 3. In this capacity, Dr. Kaufman has “been a board certified internist since 1964, and [has] acted as a medical expert to the Social Security Administration since the early 1970’s for the purpose of evaluating disabilities.” Kaufman Aff., ¶ 3. Based upon these qualifications, AIG’s reliance upon Dr. Kaufman’s opinion as part of the basis for its decision cannot be described as arbitrary and capricious.
 

 To a lesser extent, Hightshue has also urged this Court to compare the Pavol’s qualifications to Chunn’s. Again, such comparison would be improper within the parameters of the arbitrary and capricious standard. Furthermore, to compare the curriculum vitae of a vocational rehabilitation specialist and a speech pathologist brings to mind the metaphor of comparing apples to oranges. For present purposes, it suffices to consider whether AIG acted arbitrarily and capriciously by relying, in part, upon Pavol’s vocational assessment of Hightshue. According to her curriculum vitae, Pavol earned a B.A. in Psychology in 1989 and her M.A. in Counseling and Human Services in 1992. Pavol Aff., Ex. A. She is both a Licensed Professional Counselor and a Certified Insurance Rehabilitation Specialist.
 
 *1360
 
 Pavol Aff., Ex. A. In particular, her affidavit indicates that she has devoted a “substantial portion” of her employment “to conducting vocational assessments of injured workers and facilitating their return to an' optimal level of functioning an placement within the work force.” Pavol Aff., ¶ 3. In light of Pavol’s education, certifications, and experience, AIG did not act in an arbitrary and capricious manner by obtaining her opinion.
 

 As a third challenge to AIG’s decision, Hightshue asserts that AIG acted arbitrarily and capriciously by concluding that she could perform all of the jobs listed by Pavol. Hightshue has criticized some of Pa-vol’s suggestions — such as auctioneer, tobacco-warehouse agent, and other jobs involving working in high dust and lint conditions — as “preposterous.” Admittedly, some of the jobs on the list seem beyond Hightshue’s present capabilities, as they do involve working in environments with dust, gas, or fumes, but Pavol herself indicated that, even though some of the jobs might be inappropriate, Hightshue “would be capable of performing many of the occupations outlined in this report, with environments that are essentially dust or pollution free.” This Court does not consider AIG’s reliance on this conclusion to be . arbitrary and capricious. Moreover, based upon Dr. Kaufman’s conclusion that Hightshue’s present condition has resulted more from “continuous reinforcement of her symptoms by all of her caregivers” and less from her actual “exposure to toxic fumes in the workplace,” it may not have been arbitrary and capricious for AIG to have concluded that Hightshue may eventually recover to the extent that she would be able to perform even more of the jobs from Pavol’s list.
 

 Fourth, Hightshue contends that the decision to deny her disability claim was arbitrary and capricious because AIG failed to supply her with a summary plan description detailing the terms of the Plan. This argument demands close attention, for ERISA does expressly require the administrator to supply a summary plan description to each participant in the plan. 29 U.S.C. §§ 1022(a)(1), 1024(b). According to the Act, this summary plan description must contain certain information — including “the plan’s requirements respecting eligibility for participation and benefits” and “circumstances which may result in disqualification, ineligibility, or denial or loss of benefits” — and must “reasonably apprise [] beneficiaries of their rights and obligations under the plan.” 29 U.S.C. § 1022(a)(1), (b). However, ERISA also expressly states that these requirements extend to the plan administrator. 29 U.S.C. § 1021(a). “Congress has explicitly provided that the responsibility for complying with these statutory requirements falls on the plan administrator.”
 
 Klosterman v. Western Gen. Management, Inc.,
 
 32 F.3d 1119 (7th Cir.1994). A plaintiff may only bring a cause of action for violation of the disclosure requirements against the plan administrator.
 
 Id.
 
 In the present case, AIG served as claims administrator but did not act as plan administrator. As such, any failure by AIG to supply Hightshue with a summary plan description would not have violated ERISA and does not show that the company acted in an arbitrary and capricious manner when it denied her claim for disability benefits.
 

 As a fifth argument in support of her claim that AIG acted arbitrarily and capriciously, Hightshue asserts that the policy language upon which AIG relied is “vague, ambiguous, [and] internally repugnant.” Specifically, she points to the section of the Plan which defines injury as “bodily injury caused by an accident occurring while this policy is in force as to the Injured Person and resulting directly and independently of all other causes in loss covered by this policy.” In essence, Hightshue contends this language is ambiguous because an injury cannot result “directly ... of all other causes” and “independently of all other causes.” This Court agrees that such conditions, if actually imposed by the policy, might show ambiguity or even inter-, nal inconsistency.
 

 However, this Court need not impose such a strained reading upon the text of the Plan. Clearly, this sentence merely requires that an injury must result “directly” and “independently of all other causes” to be covered by the Plan. In other words, this definition simply limits coverage to bodily injuries resulting directly from an accident
 
 *1361
 
 and independently of any other cause. According to the Seventh Circuit, a court must interpret the language of an ERISA plan “ ‘in an ordinary and popular sense as would a person of average intelligence and experi
 
 ence____Wahlin,
 
 78 F.3d at 1235 (quoting
 
 Brewer v. Protexall Inc.,
 
 50 F.3d 453, 457 (7th Cir.1995)). “ ‘A term is [only] ambiguous if it is subject to reasonable alternative interpretations.’”
 
 Wahlin,
 
 78 F.3d at 1235 (quoting
 
 Bechtold v. Physicians Health Plan,
 
 19 F.3d 322, 325 (7th Cir.1994)). While Hightshue’s counsel has advanced an alternative interpretation, that interpretation cannot be described as reasonable. A person of average intelligence and experience would understand this definition to have the meaning stated previously by this Court. As such, the definition of “injury” is not ambiguous, and a court should “ ‘not artificially create ambiguity where none exists.’ ”
 
 Hammond v. Fidelity and Guarantee Life Ins. Co.,
 
 965 F.2d 428, 430 (7th Cir.1992) (quoting
 
 Evans v. Safeco Life Ins. Co.,
 
 916 F.2d 1437, 1441 (9th Cir.1990)). This Court does not believe that AIG acted arbitrarily and capriciously by relying upon the definition of “injury” when deciding whether to grant or deny Hightshue’s application for disability benefits.
 
 [6]
 

 Sixth, Hightshue argues that it was arbitrary and capricious for AIG to reach conclusions about her medical condition without first requiring her to undergo an independent medical examination. In her answer brief, Hightshue states, “although we find no ease directly on point, it would seem too apparent to require authority that where a fiduciary in making a claim determination ships the medical records off to a non-specialist who has never examined the patient to seek what is all too obviously an opinion favorable to the fiduciary’s pecuniary interest, that can only be ‘arbitrary and capricious’
 
 per se.”
 
 Again, this Court must respectfully disagree. The determination of whether to grant or deny an application for disability benefits involves a case-by-case ex-animation of the physical condition of the applicant. No unilateral rule requires the claims administrator to have the applicant examined by an independent medical practitioner under all circumstances. Where, as in this case, the claims administrator conducted a detailed review of the applicant’s medical records then forwarded those records to an independent medical examiner, the decision to not require an independent medical examination may not be viewed as arbitrary and capricious
 
 per se.
 

 Seventh, Hightshue argued that AIG’s dual roles caused the company to act improperly. Relying extensively upon an opinion by the Eleventh Circuit, Hightshue notes “the inherent conflict between the roles assumed by an insurance company that administers claims under a policy it issued.”
 
 Brown v. Blue Cross & Blue Shield of Alabama,
 
 898 F.2d 1556, 1561 (11th Cir.1990),
 
 cert. denied,
 
 498 U.S. 1040, 111 S.Ct. 712, 112 L.Ed.2d 701 (1991). “Because an insurance company pays out to beneficiaries from its own assets rather than the assets of a trust, its fiduciary role lies in perpetual conflict with its profit-making role as a business.”
 
 Brown,
 
 898 F.2d at 1561. From Hightshue’s briefs, it is unclear whether she seeks review under a heightened standard, such as
 
 de novo, or
 
 whether she contends that this conflict of interest, without more, shows that AIG acted in an arbitrary and capricious manner; however, neither approach would be appropriate.
 
 Brown
 
 itself indicated that the arbitrary and capricious standard applies in this situation. In addition, the Supreme Court has expressly stated that, “if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a ‘factor in determining whether there is an abuse of discretion.’ ”
 
 Firestone,
 
 489 U.S. at 115, 109 S.Ct. at 957 (quoting Restatement (Second) of Trusts § 187, Comment d (1959)). Accordingly, the possible conflict presented by AIG’s dual roles does not necessitate re
 
 *1362
 
 view under a higher standard or compel a finding that the company acted arbitrarily and capriciously. Instead, this Court must consider that potential conflict as “a factor” in the final evaluation of AIG’s decision.
 

 E. THE FIVE-FACTOR ARBITRARY AND CAPRICIOUS TEST
 

 Having considered each of Hightshue’s arguments against AIG’s decision, this Court may now turn to governing Seventh Circuit precedent. As noted previously, the Court of Appeals for this Circuit has identified five factors for courts to apply when determining whether a denial of benefits should be considered arbitrary and capricious. Specifically, a reviewing court must “evaluate several factors: the impartiality of the decisionmaking body, the complexity of the issues, the process afforded the parties, the extent to which the decisionmakers utilized the assistance of experts where necessary, and finally the soundness of the fiduciary’s ratiocination.”
 
 Chalmers,
 
 61 F.3d at 1344. Ultimately, though, “ ‘a court must be very confident that the decisionmaker overlooked something important or seriously erred in appreciating the significance of evidence’” before concluding that the decision maker acted in arbitrarily and capriciously.
 
 Wahlin,
 
 78 F.3d at 1235 (quoting
 
 Patterson,
 
 70 F.3d at 505).
 

 Turning first to the impartiality of the decision making body, AIG does operate under a conflict of interest, as this Court noted in the previous section. Because the company must pay benefits claims from its own assets, AIG “incurs ‘direct, immediate expense as a result of benefit determinations favorable to [pjlan participants.”
 
 Brown,
 
 898 F.2d at 1561 (brackets in original) (quoting
 
 de Nobel v. Vitro Corp.,
 
 885 F.2d 1180, 1191 (4th Cir.1989)). Consequently, this factor weighs against AIG.
 

 The second factor does not really assist either party. The underlying question of whether Hightshue’s condition resulted solely from mercaptan exposure presents complex medical issues, to be sure, yet nothing in the record suggests that this determination is so complex as to make AIG’s decision arbitrary and capricious.
 

 As the third factor, this Court must examine the process available to the parties. As documented above, AIG appears to have conducted fairly extensive consideration of Hightshue’s claim. The company reviewed all the materials she submitted with her application for disability benefits and examined medical records from numerous other sources, as well. AIG also submitted these materials to independent professionals for their assessment. Moreover, AIG kept Hightshue informed of the developments relating to her claim through letters to her attorney. The company also gave her the opportunity to submit additional materials, but she did not avail herself of this option. Finally, in the letter denying Hightshue’s claim, AIG informed her of the process by which she could appeal the decision; again, Hightshue did not commence an appeal. This process, taken as a whole, suggests that AIG did not act in an arbitrary and capricious manner.
 

 Fourth,
 
 Chalmers
 
 directs this Court to consider whether AIG “utilized the assistance of experts where necessary____” 61 F.3d at 1344. According to the record, AIG submitted the materials relating to Hightshue’s claim to two independent professionals: Dr. Kaufman and Pavol. This Court has already extensively discussed the analysis these professionals applied and the conclusions they reached. AIG relied upon their conclusions, as well as its own, in reaching its final decision. This use of outside expert assistance weighs heavily in favor of AIG.
 

 The fifth and final
 
 Chalmers
 
 factor requires this Court to evaluate AIG’s reasoning. According to the letter denying Hightshue’s benefits claim, the company concluded that she was not totally and permanently disabled because she could work in other occupations. AIG also concluded that Hightshue’s current medical condition, whether labeled RADS or Cholingerie Asthma, did not result directly from her mercaptan exposure and independently of any other cause. Hightshue’s medical records, Dr. Kaufman’s report, and Pavol’s letter all provide support for this conclusion. This Court believes that
 
 *1363
 
 AIG applied sound reasoning in reaching its conclusion.
 

 In sum, of the five factors the Seventh Circuit identified in Chalmers,
 
 [7]
 
 only one favors Hightshue. As she suggests, AIG may have had a conflict of interest based upon its dual roles as fiduciary and as claims administrator. However, Hightshue has not offered any additional evidence to support this suggestion. By contrast, the remaining four
 
 Chalmers
 
 factors favor AIG. In particular, this Court notes that AIG employed independent experts to review Hightshue’s medical history and applied sound reasoning in reaching its ultimate conclusion. Based upon all the reasons set forth above, this Court is not confident that AIG “overlooked something important or seriously erred in appreciating the significance of evidence.”
 
 Wahlin,
 
 78 F.3d at 1235. Accordingly, this Court concludes that AIG did not act in an arbitrary and capricious manner when it denied Hightshue’s claim for long-term disability benefits. Therefore, summary judgment may properly be granted in favor of AIG on this claim.
 

 F. ATTORNEY’S FEES
 

 As an additional matter, Hightshue suggests that the discretionary question of whether to award attorney fees presents a genuine issue of material fact. However, as she has correctly noted, one must be a prevailing party to receive attorney fees.
 
 Davis v. Chicago Municipal Employees Credit Union,
 
 891 F.2d 182, 184 (7th Cir.1989). Because this Court has granted summary judgment in favor of AIG on the ERISA claim, Hightshue is not a prevailing party, and this Court could not grant attorney’s fees in her favor. This point presents no genuine issues of material fact necessitating trial.
 

 CONCLUSION
 

 The procedural setting of the present case does not require — or even allow — this Court to examine whether AIG made the best decision when it denied Hightshue’s claim for long-term disability benefits. The Supreme Court and the Seventh Circuit have clearly indicated that, where a plan confers discretion upon the decision maker, a reviewing court must limit its inquiry to whether the decision maker acted in an arbitrary and capricious manner. The Plan at issue in this ease does confer such discretion, and the present record does not show that AIG acted arbitrarily and capriciously. Therefore, this Court GRANTS the motion for summary judgment filed by Defendant AIG and DENIES the motion for summary, judgment filed by Plaintiff Hightshue.
 

 [1]
 

 . Although AIG's brief states that Hightshue was “allegedly exposed to airborne mercaptan,” AIG does not appear to seriously contest this fact. Even if the parties did dispute this issue, however, such disagreement would not present a genuine issue of material fact.
 

 [2]
 

 . Although Hightshue does not dispute the fact that the master group insurance policy contains these two provisions, she has advanced a broad array of arguments as to why this language should not apply here. The following section of this Order shall examine the merits of these arguments.
 

 [3]
 

 . In addition, AIG reviewed the records from several of Hightshue’s other medical care providers. Specifically, AIG personnel obtained and reviewed records from the following sources: Immediate Care Center; Pulmonary Associates; Zionsville Family Practice; Indiana Neurology Sources; and Indiana University Hospital. Aiken Aff., ¶ 7. These materials have been included in the present record as Exhibit B to the Affidavit of Priscilla Aiken.
 

 [4]
 

 . For her part, Hightshue has presented various arguments urging this Court to apply more stringent
 
 de novo
 
 review to AIG's rejection of her benefits claim. For example, she notes that the provision granting AIG discretion does not appear "anywhere near" the definition of injury. However, she has presented no legal authority establishing that such a proximity requirement exists regarding these distinct aspects of the Plan. The only case cited by Hightshue in this regard,
 
 Sorel v. CIGNA,
 
 1995 LEXIS 8886 (D.N.H.), is an unreported New Hampshire District Court opinion which merely holds that, where the insurer requires an individual to supply "proof satisfactory to the Insurance company” in the section of the plan titled "When Benefits Begin," that language does not suffice to<, invoke the less stringent arbitrary and capricious standard of review.
 
 Sorel
 
 does not impose a general requirement that an insurer must include the provision granting discretion within a certain proximity of the definition of the term “injury,” and this Court shall not impose such a requirement, either.
 

 The remainder of Hightshue’s arguments actually relate more directly to the question of whether AIG acted in an arbitrary and capricious manner; therefore, this Court shall discuss these issues later in this Order.
 

 [5]
 

 . Additionally, this Court would note that the dispute between Dr. Kaufman and Dr. Houser does not present a
 
 Daubert
 
 problem. Under
 
 Daubert v. Merrell Dow Pharmaceuticals, Inc.,
 
 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), "a district judge asked to admit scientific evidence must determine whether the evidence is genuinely scientific, as distinct from being unscientific speculation offered by a genuine scientist.”
 
 Rosen v. Ciba-Geigy Corp.,
 
 78 F.3d 316, 319 (7th Cir.1996). Both Dr. Kaufman and Dr. Houser have extensive medical credentials, and each reviewed Hightshue’s medical records applying conventional, well-accepted methods of analysis. Of course, Dr. Houser also examined Hightshue personally, which Dr. Kaufman did not, but nothing in the record suggests that, by not conducting such an examination, Dr. Kaufman "departed] from the generally accepted scientific methodology of his field and embark[ed] upon a sea of scientific uncertainty.”
 
 Braun v. Lorillard Inc.,
 
 84 F.3d 230, 234 (7th Cir.1996). Even though the doctors have drawn different conclusions from the medical records, both have arrived at "genuinely scientific” results. This may also be said of the determinations of Pavol and Chunn — to the extent that these professionals relied upon scientific data.
 

 [6]
 

 . On a related note, Hightshue has also relied upon the doctrine of
 
 contra preferentem,
 
 which directs that “[A]mbiguous terms in an insurance contract [must] be strictly construed in favor of the insured.”
 
 Hammond,
 
 965 F.2d at 430;
 
 see also Phillips v. Lincoln National Life Ins. Co.,
 
 978 F.2d 302 (7th Cir.1992). Of course, because this Court has found the policy language to be unambiguous, the doctrine of
 
 contra preferentem
 
 has no relevance to the present case.
 

 [7]
 

 . The fact that
 
 Chalmers
 
 lists only these five factors should not necessarily be seen as limiting the reviewing court to these inquiries alone. In a different case, the inquiry may be complemented through analysis of an additional issue. However, Hightshue has not identified any other factor which would assist this Court in determining whether AIG acted in an arbitrary and capricious manner.