## No. 13,772.

EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES
*v.* HEMENOVER ET AL.
(67 P. [2d] 80)

Decided March 29, 1937.   Rehearing denied April 19, 1937.

232

Mr. Percy A. Robinson, Mr. Carl C. Hearnsberger, Mr. Fred W. Stover, for plaintiff in error.

Mr. Mortimer Stone, Mr. Alden T. Hill, for defendants in error.

*In Department.*

Mr. Chief Justice Burke delivered the opinion of the court.

These parties are hereinafter referred to as follows: Plaintiff in error as the company, Edgar E. Hemenover as Edgar, Roy E. Cook as Cook, Harriett F. Hemenover as Harriett, and one Ruby A. Howell, deceased, as Mrs. Howell. At the time of the trial of this cause Edgar was twenty-five years of age and Harriett seventeen. They

were the only children of Mrs. Howell. Cook and Edgar were guardians of the estate of Harriett.

Mrs. Howell carried a $5,000 life policy in the company. Her children were the beneficiaries. A double indemnity clause increased this sum to $10,000 in case of accidental death. Payments were to be made in monthly installments of $50 to each beneficiary. Mrs. Howell died December 31, 1932. The company admitted liability for $5,000 only and had made specified monthly payments up to August 22, 1934, when the complaint herein was filed. Defendants in error brought this suit for a declaratory judgment establishing the applicability of the double indemnity clause on the ground of death by accident. The company defended on the theory of no accident. The cause was tried to the court and an advisory jury, and judgment entered for defendants in error. To review that judgment the company prosecutes this writ.

There are twenty assignments of error. Several of these are such as we have repeatedly held no assignments, and others are not argued. Such are not further noticed. The remainder may be grouped as follows: (1) This was not a proper case for a declaratory judgment; (2) this was not a jury case, but, if it were, erroneous instructions were given and correct instructions refused; (3) the judgment is unsupported by the evidence. In addition to the foregoing there are assignments based upon the overruling of demurrers, motions for nonsuit, directed verdict, and judgment notwithstanding the verdict. We think what we hereinafter say under "3" renders special discussion of these unnecessary.

The death of Mrs. Howell was admittedly due to an overdose of luminal, taken for "nerves," or sleeplessness, and admittedly accidental. Nine instructions were given the jury and ten refused. Error is assigned as to each. The only matter submitted was the single interrogatory, "Do you find luminal to be a poison, as defined in the instructions herein, and under the testimony as

given in this cause?" The answer was "No." This answer "the court does hereby approve and adopt."

█ 1. Our Declaratory Judgments Act is chapter 98, page 268, S. L. 1923. Portions thereof relating to this controversy read: "Any person interested under a * * * written contract * * * may have determined any question of construction * * * arising under the * * * contract * * * and obtain a declaration of rights * * * thereunder." Here we have a contract, persons interested, and a question of construction. The complaint does not specifically allege that "a controversy has arisen concerning the construction of the policy," but the existence of such a controversy clearly appears from the complaint and is admitted by both demurrer and answer. Counsel for the company cite and rely upon *Gabriel v. Regents*, 83 Colo. 582, 267 Pac. 407. We do not consider it in point. From that complaint it affirmatively appeared that no controversy had in fact arisen. We think a further examination of authorities cited would be profitless. This appears to us clearly a case contemplated by the statute.

█ 2. If this was not a jury case the company has no cause of complaint. The court treated the jury as merely advisory. Findings and judgment depend in no measure upon the verdict. Hence whether the instructions were correct or incorrect is immaterial.

3. The policy provided for the increase to $10,000 "in the event of the insured's death from accident, as defined in the double indemnity provision on the third page hereof." Said provision contains the following: "Death from accident means death resulting solely from bodily injuries caused directly, exclusively and independently of all other causes by external, violent and purely accidental means, * * * but does not include death resulting from or caused directly or indirectly by the taking of any poison." It is contended: (a) That, though accidental, death was not from accidental means; (b) That death resulted from taking poison.

■ ■ a. The fine distinction between "accidental death" and "death from accidental means" would certainly never occur to an ordinary policy holder. Stated in another way this distinction is between accidental means and accidental result. The company relies primarily upon *Landress v. Phoenix M. L. Ins. Co.*, 291 U. S. 491, 54 Sup. Ct. 461, 78 L. Ed. 934, 90 A. L. R. 1382. That was a sunstroke case in which the court held the means natural though the result was accidental, hence "accidental death" not covered by the policy. Other similar cases cited are *Caldwell v. Travelers' Ins. Co.*, 305 Mo. 619, 267 S. W. 907, 39 A. L. R. 56, a case of death from a hernia operation; *Order of United Commercial Travelers v. Shane*, 64 Fed. (2d) 55; and *Mehaffey v. Insurance Co.*, 205 N. C. 701, 172 S. E. 331, a case of taking some poisonous substance intentionally, but without knowledge of its nature.

In the Landress case, supra, Mr. Justice Cardozo, in an able dissenting opinion says: "The attempted distinction between accidental results and accidental means will plunge this branch of the law into a Serbonian bog." Whatever kind of bog that is we concur. We concur also in his statement that, "The principle that should govern the interpretation of the policy in suit was stated with clarity and precision by Sanborn, J.," in *Western Com. Trav. Ass'n v. Smith*, 85 Fed. 401, 405. Other authorities to the same effect are: 1 C. J., p. 427, §73; 7 A. L. R., p. 1141, n. IV; 17 A. L. R. Annotation, p. 1197; *Provident Life & Acc. Ins. Co. v. Green*, 172 Okla. 591, 46 P. (2d) 372; *Brown v. Cont. Cas. Co.*, 161 La. 229, 108 So. 464, 45 A. L. R. 1521; *Taylor v. N. Y. Life Ins. Co.*, 176 Minn. 171, 222 N. W. 912, 60 A. L. R. 959. While perhaps not strictly in point yet in reason supporting the foregoing are: *Lampkin v. Travelers' Ins. Co.*, 11 Colo. App. 249, 52 Pac. 1040; *Preferred Acc. Ins. Co. v. Fielding*, 35 Colo. 19, 83 Pac. 1013; *Bickes v. Travelers' Ins. Co.*, 87 Colo. 297, 287 Pac. 859. Respectable authority thus appears on both sides of this question. We align this court with the views

of Judge Sanborn and Justice Cardozo. Any other conclusion seems to us a departure from our own decisions and a violation of the well settled rules that such language in such contracts is to be given its ordinary and popular meaning, and that "ambiguities and uncertainties are to be resolved against the company."

■ ■ b. Luminal, when properly used, is a medicine, valuable in the treatment of nervousness, etc., but taken in overdoses is a poison and lethal. On this the witnesses are in accord. As to whether, taken in overdoses, it was properly regarded as a poison there is a marked conflict. It appears, however, that in testifying to such popular view, some who said "no poison" were referring only to ordinary, or medicinal doses, and some who said "poison" were referring only to overdoses. Counsel for the company contend that the word, as used in the policy, must be construed by the court. We agree. But here again we are confronted by a marked conflict in the authorities. Notable among those supporting the position of the company are: *Riley v. Inter-State Ass'n,* 184 Ia. 1124, 169 N. W. 448, 2 A. L. R. 57 (And cases therein cited); *Pixley v. Illinois Ass'n,* 195 Ill. App. 135. If there is a popular interpretation, a commonly accepted meaning, of the word "poison," such is the interpretation which here must be given it. *United States Mut. Acc. Ass'n v. Newman,* 84 Va. 52, 3 S. E. 805. That there is such is certain, and that it means a substance which, *in small doses,* will destroy life, seems equally certain. Thus it is used in common speech and thus it is defined in Encyclopedia Britannica, Taylor on Poisons (2nd Ed.), p. 1, and Witthaus & Becker, Medical Jurisprudence (2nd Ed.), vol. 4, p. 53, each of which distinguishes between the uses of the term and limits the popular use as to quantity. We find the same distinction in the construction of the word in an insurance policy in the Newman case, supra, and again where it was sought to cover death by inhaling monoxide gas by the exception. *Kingsley v. American Cent. Life Ins. Co.,* 259 Mich. 53, 242 N. W. 836.

And finally the same distinction has been made by this court. *Dougherty v. People,* 1 Colo. 514, 519. We are hence driven to the conclusion that the "poison" exception in the policy before us should not be extended to cover luminal as here taken.

Those unfamiliar with the record may note the failure herein to consider the words "external" and "violent" as qualifying "accidental," in the quoted portion of the policy. These are touched upon in the briefs before us only by the following from the answer: "No issue is involved as to death being by external and violent means." We interpret the silence of counsel for the company as acquiesence therein.

One further matter, not vital to a determination of any question presented, but constituting a blot on this record, forces itself upon our attention.

Next to the prescriptions of physicians, accuracy is nowhere so imperative as in contracts, statutes and legal proceedings. It is correspondingly discouraging to find dragged into these the ingenious inventions of scriveners to confuse and befuddle. The latest and lustiest of these pests is the literary fraction "and/or," which appears at least fifty times in the record before us. The resulting confusion is emphasized by the fact that three of these are in demurrers, three in assignments, and one in a tendered instruction. We have not found one attributable to counsel for defendants in error. Whatever defense might be made for it elsewhere it becomes, in demurrer or assignment, a mere "weasel" phrase, and certainly jurors could not be expected to interpret it. Mr. John W. Davis calls this a "pollution of the English language." Mr. George W. Wickersham refers to it as a "barbarism," "one of the worst examples of 'journalese'," and says, "Its use in pleadings and court proceedings and in legislative acts is utterly unjustified." Numerous appellate courts have been called upon to deal with it and have generally spoken of it with disrespect. Mr. Justice Fowler, speaking for the Supreme Court of

Wisconsin, has dubbed it a "nameless thing, that Janus-faced verbal monstrosity, neither word nor phrase." *Employers Mutual Liability Ins. Co. v. Tollefsen,* 219 Wis. 434, 263 N. W. 376. We do not quote further from the foregoing because of the caustic criticism of counsel which follows, and we expressly disclaim a present purpose to so criticise. We wish simply to suggest the uselessness and absurdity of "and/or" and express the hope that this is its last appearance in this tribunal.

The judgment is affirmed.

MR. JUSTICE HILLIARD and MR. JUSTICE BAKKE concur.