Lois **BLAIR**, Plaintiff–Appellant,

v.

**METROPOLITAN LIFE INSURANCE COMPANY**, Defendant–Appellee.

No. 91–6084.

United States Court of Appeals, Tenth Circuit.

June 29, 1992.

Publication Ordered Sept. 9, 1992.

---

Gary C. Rhodes (L. Win Holbrook and Tim D. Haggard, with him on the brief), Rhodes & Holbrook, Oklahoma City, Okl., for plaintiff-appellant.

Allan M. Marcus, Of Counsel (Paul G. Huck, Of Counsel, and William J. Toppeta, with him on the brief), Metropolitan Life Ins. Co., New York City, for defendant-appellee.

Before ANDERSON and SETH, Circuit Judges, and SAFFELS,* District Judge.

STEPHEN H. ANDERSON, Circuit Judge.

The question before us in this ERISA[1] case is whether Lois Blair's treatment for temporomandibular joint dysfunction ("TMJ") is excluded from coverage under the medical expense insurance portion of the policy underwritten by the Metropolitan Life Insurance Company (MetLife), and provided for her benefit by her employer Hertz Penske Truck Leasing, Inc. (Hertz). Specifically, the question is whether the treatment Blair received was a "dental service" and thus excluded from coverage under the policy. The district court determined, as a conclusion of law, that the treatment in question was a dental service, not covered under the policy. 756 F.Supp. 522 (W.D.Okla.1991). We respectfully disagree and reverse and remand for further proceedings.

As an employee of Hertz, the appellant, Lois Blair, was covered during the periods relevant to this case by insurance underwritten for Hertz by MetLife.[2] Hertz was the plan administrator. MetLife was the claims administrator. The plan of insurance was an employee welfare benefit plan governed by ERISA.

MetLife does not dispute that Ms. Blair suffered from TMJ, or that her condition resulted from an injury. Therefore, we do not pursue those matters. Blair sought and received treatment for her condition from a dentist, James McDonald, beginning in 1987. McDonald's treatment consisted of: (a) a spacer (an appliance) between the upper and lower arches inserted to allow the joints to heal by keeping them from sinking into the fossa; (b) orthodontic/orthopedic appliances for achieving a fit between the upper and lower arches by moving teeth; and (c) stabilization of the resulting alignment by reconstructing and repositioning teeth, and the use of an appliance at night. McDonald crowned two teeth as part of the latter phase. Treatment cost, as of the date of the pretrial order, was $21,250.00. Blair submitted claims for that amount under the medical expense provisions of her insurance coverage, and MetLife declined coverage.

The relevant provisions of the policy are as follows:

Definitions

(1) "Covered Medical Expenses" means reasonable charges incurred for the following types of medical services rendered to the Employee or Dependent, as the case may be, which are performed or prescribed by a physician or surgeon, subject to the exceptions set forth below: Services of physicians and surgeons. . . .

\* \* \* \* \* \*

Exceptions.—Expenses incurred for any of the following shall in no event be considered Covered Medical Expenses:

(a) Dental services of any kind. . . .

\* \* \* \* \* \*

(4) "Physician or Surgeon" means only a physician or surgeon who is legally licensed to practice medicine.

---

\* Honorable Dale E. Saffels, Senior Judge, United States District Court, District of Kansas, sitting by designation.

1. Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.*

2. Hertz discontinued its relationship with MetLife in 1987. App. to Appellant's Opening Br., Ex. K at 17. Thus this case is likely to be one of a kind, confined to its facts.

App. to Appellant's Opening Br. ("App."), Ex. I at pp. 50–52.

Paragraphs (1) and (4) of these provisions, limiting coverage to services performed by physicians or surgeons, is not controlling. MetLife denied Ms. Blair's claim solely on the ground that Dr. McDonald's treatment was excepted from coverage because it constituted dental services, not because he was not a physician licensed to practice medicine. App., Ex. C, Final Pretrial Order at 1–2. Reliance on the provisions of paragraph (a) is a tacit admission by MetLife that it construed its own policy provision under paragraph (1) to include dentists as physicians practicing medicine. Furthermore, MetLife's own expert, Dr. Leonard Swimmer, testified that the D.D.S. and D.M.D. degrees (Doctor of Dental Surgery and Doctor of Medical Dentistry), conferred upon dentists are indistinguishable, App., Ex. K at 51–52, and that it is common for dentists to perform medical procedures, id. at 58. He characterized his own treatment for TMJ as the practice of medicine, id. at 53, although his degree is in dentistry, id. at 35. In any event, Ms. Blair's case, through the testimony of Dr. McDonald, was sufficient to carry her threshold burden of proof on the point, and MetLife presented no direct evidence whatsoever going specifically to a construction of the policy term "physician ... licensed to practice medicine." Certainly, nothing presented by MetLife established that its cutoff point for coverage (except for accidental injury) was whether the treating doctor was an M.D.

Thus, our review focuses, as did the district court, on the meaning of the term "dental services" in paragraph (a) of the exceptions section. Our review of the terms of the plan and the denial of benefits is de novo. Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 110, 115, 109 S.Ct.

948, 954, 956, 103 L.Ed.2d 80 (1989); McGee v. Equicor–Equitable HCA Corp., 953 F.2d 1192, 1200–1201 (10th Cir.1992). In conducting that de novo review—

We are mindful that the objective in construing a health care agreement, as with general contract terms, is to ascertain and carry out the true intention of the parties. However, we do so giving the language its common and ordinary meaning as a reasonable person in the position of the HMO participant, not the actual participant, would have understood the words to mean. See Bruch, 489 U.S. at 112, 109 S.Ct. at 955 (no deference to either party's interpretation). Under general contract law principles, "words cannot be written into the agreement imparting an intent wholly unexpressed when it was executed."

*   *   *   *   *   *

To do so would thwart the congressional purpose of ERISA's disclosure provisions which are designed to ensure "that 'the individual participant knows exactly where he stands with respect to the plan' ..." Bruch, 489 U.S. at 118, 109 S.Ct. at 958.

McGee, 953 F.2d at 1202.

The insured, Blair, carries the burden of showing a covered loss, and the insurer, MetLife, must prove facts that bring a loss under the exclusionary clause of the policy. Id. at 1205.

We conclude that the exclusionary term "dental services" as used in this plan, is ambiguous. Looking at the policy, there is no way for an insured to understand that dental services not only include treatment directed at the teeth to correct a condition of the teeth, but also include treatment for a dysfunction of muscles and joints, with teeth incidentally involved.[3] And, MetLife

---

3. MetLife introduced at trial a 1985 galley proof of a plan revision specifically excluding coverage for TMJ. The district court properly did not consider it. MetLife's representative conceded it was an internal document, and there was no evidence of it having been distributed to Hertz employees as the operative policy. For multiple reasons MetLife's argument that it must be considered as proof of Hertz's intention is not supported by the governing legal principles set out above, at the beginning of our analysis. For example, the new provisions relate to changes or clarifications in coverage, not to how Hertz or MetLife defined the critical phrases in the policy under consideration at the time of issuance. No witness from Hertz appeared. On remand, this document may not be used to disturb our disposition here.

failed to carry its burden of proving otherwise.

MetLife's expert, Dr. Swimmer, also a dentist but specializing in oral surgery, testified that *his* treatment of TMJ constitutes a medical service because he operates to correct the problem, and Dr. McDonald did not. In other words, for treatment of the same *medical* problem, an invasive approach (cutting the tissue, etc.) is not dental, but a non-invasive approach is. *Id.* at 53–54. A reasonable insured would not be expected to glean that distinction as it relates to treatment of an identical dysfunction, from the words "dental services." In this and other respects we agree with much of the reasoning of the Second Circuit in *Masella v. Blue Cross & Blue Shield of Connecticut, Inc.,* 936 F.2d 98, 106–107 (2d Cir.1991) (a case involving a plan with significantly different provisions, but reasoning fairly applicable here).

Having determined that the policy is ambiguous we resolve that ambiguity in Blair's favor based on the record in this case. We do so without resort to the *contra proferentem* rule, and without resolving whether that rule should be applied to contracts governed by ERISA. *See McGee,* 953 F.2d at 1200. MetLife urges us to apply federal common law, governed by principles of trust law. Br. of Defendant–Appellee Metropolitan Life Insurance Co. at 11–13. We do so. In doing so, however, we adopt the approach of the Second Circuit in *Masella,* 936 F.2d at 107. Resolving the ambiguity in Blair's favor is consistent with basic trust principles that protect, in a case like this, the interests of the beneficiary-employee. *Id.* Thus, under trust principles, or state contract law, we arrive at the same conclusion: that the ambiguity here must be resolved in favor of Blair.

Our disposition of the coverage issue in this case is compelled by the nature of the record before us. We by no means establish any general rule regarding TMJ. The area relating to TMJ is, to say the least, controversial. However, MetLife did not dispute the diagnosis here, or the necessity for treatment. Also, policy provisions differ, as does the nature of the testimony in each case.

Our disposition of this case makes consideration of other issues necessary. The policy in question only reimburses reasonable charges. Dr. McDonald testified that at least a portion of his charges were low. App., Ex. K at 29. Dr. Swimmer testified they were twice what a reasonable amount would be. *Id.* at 40. The district court did not reach the question because it found coverage excluded by the policy. Accordingly, we remand this issue to the district court for determination. Likewise, the questions of interest and attorneys fees must be addressed by the district court on remand. *See McGee,* 953 F.2d at 1209.

For the reasons stated, we REVERSE the judgment of the district court and REMAND for further proceedings not inconsistent with this opinion.