Rachel ROLF, Plaintiff,

v.

HEALTH AND WELFARE PLAN FOR EMPLOYEES OF CRACKER BARREL OLD COUNTRY STORE, INC., Defendant.

Civil Action No. 97–2386–GTV.

United States District Court, D. Kansas.

Sept. 11, 1998.

Timothy M. O'Brien, Celia K. Garrett, Shook, Hardy & Bacon L.L.P., Overland Park, KS, for Plaintiff.

Stanley N. Wilkins, Turner & Boisseau, Chartered, Overland Park, KS, Karen LC Ellis, Bass, Berry & Sims P.L.C., Nashville, TN, for Defendant.

### MEMORANDUM AND ORDER

VAN BEBBER, Chief Judge.

Plaintiff, a participant in defendant's employee welfare benefit plan ("the Plan"), brought suit against the Plan under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, to recover medical disability benefits stemming from her pre-existing asthmatic condition. The plan administrator denied plaintiff's claim on the basis that the Plan did not cover any expenses stemming from pre-existing medical conditions. Plaintiff claims that she is entitled to benefits either because the Plan's pre-existing conditions limitation did not apply to her or because the Plan's language relating to the limitation was ambigu-

1. The "EPO Medical Section" or "Exclusive Provider Organization Section" describes the benefits provided under Cracker Barrel's managed care program called Great–West Care Exclusive.

ous. The case is before the court on defendant's motion for summary judgment (Doc. 34) and plaintiff's cross-motion for summary judgment (Doc. 38). Based on the record before the court, defendant's motion is granted and plaintiff's cross-motion is denied.

### I. Factual Background

Plaintiff began working for Cracker Barrel Old Country Store, Inc. ("Cracker Barrel") on September 2, 1995. She became eligible for health insurance benefits coverage under Cracker Barrel's Health and Welfare Plan ("the Plan") on December 2, 1995. The terms of the Plan are contained in a Summary Plan Description, which is distributed to all employees. The Summary Plan Description is the only Plan document and, therefore, is the Plan for purposes of ERISA and the instant motions.

The Plan is set out in a 263–page manual divided into 13 sections denominated as: Introduction, Eligibility, Medical Plans, EPO Medical,[1] PPO Medical,[2] Out–of–Area Medical, Drugs, Dental, Life, AD & D (accidental death and dismemberment), Claims, Section 125 (of the Internal Revenue Code), and Glossary. There is no table of contents at the beginning of the manual, and no tabs or dividers separating the various sections. However, the right margin of every odd page is stamped with a black rectangle containing the name of the section in which that page is located. This method of section division, although not a model of efficiency, allows readers to find particular sections with relative ease. The first page of each section is a table of contents for that section entitled "Where to Find the Answers to Your Questions." To further aid the reader, each table of contents page is printed on green paper.

Under the Plan, individuals seeking coverage are considered either a "timely applicant" or a "late applicant." At page seven of the Eligibility section the Plan explains when an individual is considered a late applicant:

2. The "PPO Medical Section" or "Preferred Provider Organization Section" describes the benefits provided under Cracker Barrel's managed care program called Great–West Care.

**What If I Don't Apply For Coverage When I'm First Eligible?**

A person will be considered a late applicant under this Plan if:

- You have to make a contribution and don't apply for coverage within 31 days of the date you become eligible to cover that person; or

- You do not have to make a contribution but elect not to cover that person; or

- You were eligible to cover that person under your Employer's prior plan but did not elect coverage;

and you later want coverage for that person.

The parties agree that plaintiff was a timely applicant. Plaintiff claims that the Plan's pre-existing conditions limitation applies only to late applicants.

In the various sections of the Plan, there are numerous references to a pre-existing conditions limitation:

1. In the Eligibility section at page four, the Plan states that the pre-existing conditions limitation applies to medical benefits for dependents. In a parenthetical, the reader is directed to the Plan's Medical Benefits section for more information.

2. At pages eight and nine of the Eligibility section, the Plan states that "Medical Benefits for late applicants will be subject to 'Pre–Existing Conditions Limitation' in the Medical Benefits section(s)."

3. At the beginning of the EPO Medical section, there is a three-page table of contents titled "Where to Find the Answers to Your Questions." Next to a bullet point in this table is the heading "What's Not Covered?" Under this heading is the listing: "Pre–Existing Conditions Limitation." The reader is directed to page thirty-one of the section for more information. Under the heading "What's Not Covered?" on page thirty-one, there is a bullet point with the title "Pre–Existing Conditions Limitation." Under this heading, the Plan reads as follows:

A pre-existing condition is an Illness or any related condition for which you or your Dependant received services, supplies or medication during the 3 months before coverage for you or your Dependant became effective under this medical Plan.

Beside this section is a symbol reminiscent of a "No Smoking" sign with the word "COVERED" overlaid with a circle with a line through it.

4. Similarly, at the beginning of the PPO Medical section, there is another three-page table of contents titled "Where to Find the Answers to Your Questions." Next to a bullet point in this table is the heading "What's Not Covered?" Under this heading is the listing: "Pre–Existing Conditions Limitation." The reader is directed to page thirty-four of the PPO Medical section for more information. Page thirty-four contains the same definition of pre-existing conditions as was found at page thirty-one of the EPO Medical section.

On December 3, 1995, plaintiff suffered a severe asthma attack, was hospitalized and placed in intensive care, and incurred significant medical expenses. On December 6, 1995, plaintiff signed a document titled "Group Life & Health Enrollment Form" that was provided by Cracker Barrel. Through this document, plaintiff enrolled in Great–West Care, a preferred provider organization. On January 16, 1996, plaintiff submitted a claim to the Plan for benefits to recover her medical expenses. The Plan first denied plaintiff's claim contending that she was not eligible for benefits until December 9, 1995—six days after she was hospitalized. Plaintiff appealed this decision. Robert Savage, Director of Compensation and Benefits for Cracker Barrel and the Plan Administrator, reviewed the decision and concluded that plaintiff became eligible for benefits as of December 2, 1995.

Plaintiff's claim was then resubmitted. Great–West Life and Annuity Company ("Great–West"), the claims administrator for the Plan, denied plaintiff's claim on February 2, 1996, on the ground that the medical charges submitted flowed from a preexisting

condition. On February 13, 1996, plaintiff appealed Great–West's claim denial to Robert Savage. Plaintiff did not deny that she had a pre-existing condition; rather, she argued that the Plan's pre-existing conditions limitation did not apply to her. Savage reviewed plaintiff's claim and concluded that the pre-existing conditions limitation did apply to plaintiff, and that her claim must be denied. At plaintiff's urging, Great–West agreed to "re-review" her claims. On March 17, 1997, Great–West determined that the previous denials were appropriate and that plaintiff's medical expenses for her pre-existing condition were not covered by the plan.

## II. Summary Judgment Standards

A moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. This burden may be discharged by "showing" that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party, who "may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Thus, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *See id.*

The legal standard does not change if the parties file cross-motions for summary judgment. Each party has the burden of establishing the lack of a genuine issue of material fact and entitlement to judgment as matter of law. *See Houghton v. Foremost Fin. Servs. Corp.,* 724 F.2d 112, 114 (10th Cir. 1983). However, the court will not automati-

cally decide the case at the summary judgment stage merely because the parties have filed cross-motions for summary judgment. *Id.*

## III. Standard of Review

ERISA does not provide an express standard of review for courts to apply in a benefits dispute brought pursuant to 29 U.S.C. § 1132(a)(1)(B). The Supreme Court, however, in *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 110–12, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), held that the language of the plan under which a plaintiff seeks benefits determines the appropriate standard of review. If the plan grants no discretion to the administrator or fiduciary to construe plan terms or determine eligibility, a de novo standard applies. *Id.* at 115, 109 S.Ct. 948. If, however, the plan bestows discretion upon the administrator or fiduciary to interpret plan terms or assess an individual's eligibility, an arbitrary and capricious standard applies. *Id.*

The parties disagree as to the standard of review the court should apply. The Plan names Robert Savage as the plan administrator and gives Savage full discretion to determine eligibility under the Plan, to interpret the Plan, and to determine whether a claim should be paid or denied. Normally, such a grant of discretion would result in the application of an arbitrary and capricious standard of review. In this case, however, plaintiff argues that Savage did not make the final decision to deny plaintiff's claim. Plaintiff claims that Great–Western, the claims manager, further reviewed Savage's benefits decision and issued the final benefits denial. The parties agree that Great–Western was not the named plan administrator and had no discretion in determining whether a claim should be paid or denied. Plaintiff, therefore, claims that a de novo review must be applied because the final benefits decision was made by Great–Western—the claims manager possessing no discretion to construe the Plan's terms or determine eligibility. Defendant argues that Great–Western's subsequent review did not diminish the finality of Savage's discretionary review of plaintiff's claims.

While resolution of this issue may determine the applicable standard of review, the court need not decide it. The court concludes that the final decision to deny benefits—whether made by Savage or Great–Western—was reasonable under either an arbitrary and capricious standard or de novo review.

## V. Discussion

█ Plaintiff admits that she had a pre-existing asthmatic condition as defined by the Plan. Plaintiff also implicitly admits that the "EPO Medical" and "PPO Medical" sections provide that pre-existing conditions are not covered by the Plan. Plaintiff, however, argues that the Plan is ambiguous, and that any ambiguity should be interpreted in her favor. Specifically, plaintiff claims that the Eligibility section provides that only late applicants are subject to a pre-existing conditions limitation. Plaintiff attempts to bolster her argument with the assertion that the Plan at no time expressly provides that a pre-existing conditions limitation applies to timely applicants such as plaintiff. Plaintiff claims the limitation language in the Eligibility section, when juxtaposed with other language in the "EPO Medical" and "PPO Medical" sections, creates an ambiguity warranting her recovery under the state common law doctrine of "reasonable expectations."[3]

█ When written documents constituting an employee benefit plan are not ambiguous, state common law notions such as the reasonable expectation doctrine are preempted by ERISA. *Lott v. Hertz Custom Benefit Program,* No. 90–1331, 1992 WL 73061, at *2 (10th Cir. April 9, 1992) (unpublished opinion); *see also Meester v. IASD Health Servs. Corp.,* 963 F.2d 194, 197 (8th Cir.1992) (where plan summary is not ambiguous, there is no occasion to apply the reasonable expectation doctrine). Plaintiff must, therefore, establish that the Plan's application of the preexisting conditions limita-

tion was ambiguous before the reasonable expectations doctrine can be applied.

To be ambiguous, the contract must contain provisions or language of doubtful or conflicting meaning, as gleaned from the natural and reasonable interpretation of its language. An ambiguity does not appear until application of pertinent rules of interpretation to the face of the instrument leaves it generally uncertain which one of two or more meanings is the proper meaning. A written contract is not ambiguous unless two or more meanings can be construed from the contract provisions themselves. *Hart v. Sprint Communications Co.,* 872 F.Supp. 848, 854 (D.Kan.1994) (citations omitted). "In determining whether a contract is ambiguous, the court must not read one part of the contract to the exclusion of another." *Baxter State Bank v. Bernhardt,* 985 F.Supp. 1259, 1268 (D.Kan.1997). The court concludes that the Plan is not ambiguous. When the various references to the pre-existing conditions limitations are read in tandem with the rest of the Plan, it is clear that they apply to both late and timely applicants.

█ Having determined that pre-existing conditions limitation language was not ambiguous, the court must determine if the Plan bars plaintiff from recovery. In the Tenth Circuit, "the objective in construing a health care agreement ... is to ascertain and carry out the true intentions of the parties." *Blair v. Metropolitan Life Ins. Co.,* 974 F.2d 1219, 1221 (10th Cir.1992). "The intention of the parties and the meaning of the contract are to be determined from the instrument itself where the terms are plain and unambiguous." *Wolfgang v. Mid–America Motorsports, Inc.,* 111 F.3d 1515, 1524 (10th Cir.1997). Furthermore, a court must give the Plan's "language its common and ordinary meaning as a reasonable person in the position of the [plan] participant, not the actual participant, would have understood the words to mean." *Blair,* 974 F.2d at 1221

---

**3.** This doctrine states that courts should protect the "reasonable expectations of applicants ... regarding the coverage afforded by insurance carriers even though a careful examination of the policy provisions indicates that such expectations

are contrary to the expressed intention of the insurer." *Saltarelli v. Bob Baker Group Med. Trust,* 35 F.3d 382, 386 (9th Cir.1994) (citations omitted).

(citing *Firestone,* 489 U.S. at 112, 109 S.Ct. 948). The court concludes that a reasonable person would understand that the Plan's preexisting conditions limitation applies to both timely and late applicants.

Under the Plan, plaintiff had a choice of enrolling in either Great–West Care Exclusive, an exclusive provider organization, or Great–West Care, a preferred provider organization. Had a reasonable person in plaintiff's position examined the Plan, she would have noticed sections entitled "EPO Medical" and "PPO Medical." Green sheets marked the beginning of each section. Turning to these green sheets, she would have discovered a helpful, unambiguous table of contents entitled "Where to Find the Answers to Your Questions." Each table of contents contained an entry for the subsection entitled "What is Not Covered." In both instances, the line directly below this subsection read "Pre–Existing Conditions." Having found this important coverage limitation, a reasonable person in plaintiff's position would have turned to page thirty-one of the EPO Medical section and page thirty-four of the PPO Medical section, respectively. At these pages, she would have found an unambiguous definition of a "pre-existing condition." Furthermore, a reasonable person in plaintiff's position would have deduced from the various headings and subheadings that the Plan's pre-existing conditions limitation applied to her.

Rather than looking under the EPO Medical or the PPO Medical sections, plaintiff apparently reviewed only the Eligibility section and read the subsection entitled "What If I Don't Apply For Coverage When I'm First Eligible." There, plaintiff read that "Medical benefits for late applicants will be subject to 'Pre–Existing Conditions Limitation' in the Medical Benefits section(s)." The sentence means what it says. It was unreasonable for plaintiff to construe these lines as stating that applicants who are not late, are not subject to the pre-existing conditions limitation. Furthermore, while it was reasonable for plaintiff to have read the Eligibility section, it was not reasonable for plaintiff to have relied solely upon a specific subsection that was not applicable to her, as she was a

timely applicant. Accordingly, the court concludes that the Plan's pre-existing conditions limitation applies to plaintiff, and that plaintiff's medical expenses are not covered by the Plan.

IT IS, THEREFORE, BY THE COURT ORDERED that defendants' motion for summary judgment (Doc. 34) is granted.

IT IS FURTHER BY THE COURT ORDERED that plaintiff's cross-motion for summary judgment (Doc. 38) is denied.

The clerk shall mail copies of this order to counsel of record.

**IT IS SO ORDERED.**

Dated at Kansas City, Kansas, this 10 day of September 1998.